COOPER, RESPONDENT, *v.* GOBLE ET AL., DEFENDANTS; COLE, APPELLANT.

(No. 5,985.)

(Submitted November 16, 1926.   Decided December 16, 1926.)

[252 Pac. 362.]

*Mortgages—Real Property—Foreclosure After Taking Deed from Mortgagor—Merger of Legal and Equitable Title—What Does not Constitute.*

Mortgages—Foreclosure—Mortgagee Taking Prior Deed from Mortgagor—Contemporaneous Agreements—Transactions to be Viewed as One.
1.   Where preliminary agreements culminating in a deed to mortgaged property by the mortgagor to the mortgagee were made in consideration of the execution and delivery of the deed, the several transactions had at the same time must be taken together and considered as though all the promises, agreements and obligations of the parties were contained in a single instrument signed by all the parties; hence the fact that the wife of the mortgagor did not sign one of the agreements did not render the deed invalid, she having been a party to the entire transaction, taking part therein with full knowledge of all the facts.

Same—Mortgagee Taking Deed from Mortgagor—Merger of Legal and Equitable Title—Intent Controlling.
2.   As between the mortgagor of real property and the mortgagee, the question whether a merger of the legal and equitable title thereto resulted in the latter by his taking a deed from the former was one of fact, determination of which depended upon his intention; and where in a subsequent foreclosure action appellant, holder of an intervening judgment lien, stipulated that the deed had been taken by plaintiff mortgagee as additional security only for the mortgage debt, no merger of title was consummated.

Same—Taking of Deed by Mortgagee Does not Alone Extinguish Mortgage Lien.
3.   As between the parties to a real estate mortgage, the taking of a deed to the property by the mortgagee from the mortgagor does not of itself extinguish the lien.

---

2.   Merger of mortgage in fee, see notes in 99 **Am. St. Rep.** 161; 39 **L. R. A.** (n. s.) 834.   See, also, 19 **R. C. L.** 484.

[77 Mont. 580.]

Same—Merger of Title—What Insufficient.

4. The fact that plaintiff in a foreclosure suit who had taken a deed to the mortgaged property from the mortgagor styled himself, in a contract giving the mortgagor the right to repurchase on payment of the mortgage debt, the "owner" did not effect a merger of title in face of a stipulation in the record that the deed had been given as further security only.

Same.

5. Where a deed to mortgaged lands taken by the mortgagee was not taken for the sole purpose of avoiding the expense of foreclosure, but with the idea that he would have better security for the payment of the debt without any expense of foreclosure, the transaction did not bring about a merger of the legal and equitable title to the property in the mortgagee.

Same—Extension of Time of Payment of Mortgage Debt—Exaction of Greater Rate of Interest—Effect on Security.

6. Where mortgagor and mortgagee agree after maturity of the note evidencing the debt that for an extension of time in which to make payment the mortgagor thenceforth should pay a greater rate of interest than that called for in the mortgage note, the security in existence is not affected thereby.

Same—Claim of Merger of Title—How Viewed by Equity.

7. While assumption of ownership of mortgaged land by the mortgagee under a deed from the mortgagor, recordation thereof, taking possession and leasing the premises in law effect a merger, equity will keep the legal and equitable title separate, when necessary to protect his just rights, and will presume, even in the absence of proof as to his intention in taking the deed, that he intended to keep his mortgage alive when essential to protect his security as against an intervening title.

Same—Mortgagee Taking Deed from Mortgagor—Intervening Liens—When Equity will not Sustain Claim of Merger of Title.

8. Where a mortgagee at the time of taking legal title to mortgaged lands was ignorant of an intervening judgment lien, equity will prevent a merger of title on the theory that he could not have intended to extinguish his mortgage rights if he had known of the intervening lien, especially so where he retained the mortgage note, refused to satisfy the mortgage of record, and accepted the deed only as additional security for the principal obligation.

---

[1]   Contracts, 13 **C. J.**, sec. 487, p. 529, n. 52.

[2]   Mortgages, 41 **C. J.**, sec. 869, p. 776, n. 86; sec. 872, p. 776, n. 98; p. 777, n. 4; sec. 873, p. 778, n. 27.

[3]   Mortgages, 41 **C. J.**, sec. 876, p. 781, n. 47 New.

[4]   Mortgages, 41 **C. J.**, sec. 869, p. 775, n. 82; sec. 873, p. 778, n. 27.

[5]   Mortgages, 41 **C. J.**, sec. 873, p. 778, n. 27.

[6]   Mortgages, 41 **C. J.**, sec. 873, p. 778, n. 18; sec. 944, p. 806, n. 93; sec. 945, p. 807, n. 98; sec. 952, p. 809, n. 26.

[7]   Mortgages, 41 **C. J.**, § 869, p. 775, n. 79; p. 776, n. 85; sec. 873, p. 778, n. 13; sec. 874, p. 779, n. 30.

[8]   Mortgages, 41 **C. J.**, sec. 875, p. 780, n. 37; p. 781, n. 38.

6. See 19 **R. C. L.** 451, 452.

8. See 19 **R. C. L.** 485.

*Appeal from District Court, Fergus County; Edgar J. Baker, Judge.*

SUIT by Edgar C. Cooper against Louise T. Goble and others to foreclose a mortgage. Burton R. Cole appeals from a judgment of foreclosure. Affirmed.

*Messrs. Von Tobel & Cole,* for Appellant, submitted a brief; *Mr. Burton R. Cole* argued the cause orally.

This is not a case of a mortgagee acquiring the legal title, as additional security, without any intention of canceling the indebtedness, which seems to have been respondent's theory, but rather one where the mortgagor owner acquires the mortgage, thereby extinguishing the mortgage indebtedness, which is clearly shown by the pleadings and the statement of facts.

It would seem to be fundamental that, while a person may acquire property against which he holds a mortgage, for the purpose of further securing the indebtedness, the owner of mortgaged property may not acquire the mortgage, subsequent to his becoming the owner of the property, and thereby become indebted to himself and have the mortgage survive against himself. When a mortgagor, or his grantee, acquires the interest of the mortgagee, it is tantamount to satisfaction of the debt, and the intervening lien attaches, except, perhaps, in a case of mistake as to the facts, or of fraud, but there is no claim of anything of that kind here. (*Hamilton* v. *Smith,* 36 Mont. 1, 122 Am. St. Rep. 330, 92 Pac. 32; *Western Iron Works* v. *Montana Pulp & Paper Co.,* 30 Mont. 550, 77 Pac. 413.)

If there was anything in the nature of a mistake on the part of respondent, in any of his transactions, as set out in his complaint and in the statement of facts, it was purely one of law. He knew of the outstanding mortgage, and, by the use of reasonable diligence, might have known of the existence of appellant's judgment, as it was docketed November 17, 1919, more than four years prior to his taking the deed from the

Gobles. Respondent's mistake, if any, was purely one of law and not of fact, and the court can afford him no relief. (*Garwood* v. *Eldridge*, 2 N. J. Eq. 145, 34 Am. Dec. 195; *Hart* v. *Roper*, 41 N. C. 349, 51 Am. Dec. 425; *Hunt* v. *Rhodes*, 1 Pet. (U. S.) 15, 7 L. Ed. 27, and extended note [see, also, Rose's U. S. Notes].)

Respondent, in taking the deed from the Gobles, agreed to pay the mortgage, for, while no such agreement or stipulation is contained in the deed, nevertheless, as a part of the same transaction, he entered into an agreement with Lewis H. Goble to reconvey to him the property for the sum of $7,577.40, being the exact amount agreed upon between them as due upon the mortgage, and he thereby became the principal debtor, as well as the owner of the property, so that a complete merger was effected when he acquired the interest of the mortgagee. (*Forthman* v. *Deters*, 206 Ill. 159, 99 Am. St. Rep. 145, 151, 69 N. E. 97; *Clark* v. *Glos*, 180 Ill. 556, 72 Am. St. Rep. 223, 54 N. E. 631; *Beacham* v. *Gurney*, 91 Iowa, 621, 60 N. W. 87; Pomeroy's Equity Jurisprudence, secs. 793, 797.)    The mere fact that respondent's interest would have been better protected by permitting the lien of the mortgage to stand will not control, against the intention, clearly established.

*Mr. Oscar O. Mueller*, for Respondent, submitted a brief and argued the cause orally.

Citing: *Dubbles* v. *Thompson*, 49 Mont. 550, 143 Pac. 986; 27 Cyc. 1379, 1381, 1382; 29 A. L. R. 699; 39 L. R. A. 834.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On May 6, 1925, Edgar C. Cooper commenced foreclosure proceedings against Lewis H. Goble and Louise T. Goble, as the mortgagors of certain lands lying in Fergus county, and joined as defendants certain individuals and corporations, in-

cluding Burton R. Cole, which persons, it was alleged in the complaint, claimed some interest in the lands in question, but which claims were acquired subsequent to the execution of the mortgage sought to be foreclosed.

All of the defendants, with the exception of Cole, defaulted, and their defaults were duly entered. Cole answered, virtually admitting all of the allegations of the complaint, with the exception of the allegation that his claim or lien against the property was subsequent to that of the plaintiff, and set up matter which he alleged rendered his claim a first lien against the property.

The cause was submitted to the court on an agreed statement of facts, on which the court found generally that all of the allegations of the complaint were true, and on this finding entered its judgment and decree in favor of the plaintiff, foreclosing all equity of redemption and all claims of right in and to the property, or any part thereof, by any of the defendants. From this judgment the defendant Cole has appealed.

Under the admissions in the pleadings and the agreed statement of facts, it appears that, on August 1, 1917, Louise T. Goble and Lewis H. Goble, her husband, for value received executed and delivered to one P. H. Cooper their promissory note for $6,000, due in five years, with interest at the rate of seven per cent per annum, payable at Aurora, Illinois, and as security therefor executed and delivered a mortgage on certain real property in Fergus county, which mortgage was duly recorded; neither the principal nor the interest due on the note was ever paid. On March 9, 1924, after maturity of the note, the said P. H. Cooper assigned the note and mortgage to plaintiff, Edgar C. Cooper.

On November 17, 1919, subsequent to the recordation of the mortgage, certain third parties secured a judgment against the defendants Goble for an amount in excess of $1,000, which judgment was duly docketed, and was, on November 26, 1919,

duly assigned to defendant Cole. This judgment is still unpaid, and Cole is the owner thereof.

It further appears that all of the lands described in the mortgage were originally acquired by Lewis H. Goble, but were by him, prior to the execution of the said mortgage, conveyed to his wife, Louise T. Goble, for the recited consideration of one dollar. In 1921 oil leases were executed to certain of the defendants, and thereafter the wife executed a deed to twelve and one-half per cent royalty under the leases to Lewis H. Goble.

On February 1, 1924, Lewis H. Goble "conferred with the plaintiff in regard to the mortgage debt," acknowledged that there was then due and unpaid $7,577.40, and informed the plaintiff that he intended taking bankruptcy, but was desirous of remaining in possession of the premises and "ultimately paying the mortgage thereon, and, in order to effect this result, and as additional security for said debt, offered and agreed to deliver to plaintiff a warranty deed to the premises upon plaintiff signing a written contract whereby the defendant Lewis H. Goble would secure the full title" on payment of the amount due on the mortgage note, out of crops grown on the land. As a result of this conference, a contract was drawn up which recites in closing, "Drawn in duplicate this, the 1st day of February, A. D. 1924," and is signed "Ed. C. Cooper." This contract opens with the declaration, "Know all men by these presents, that Ed. C. Cooper * * * is the owner of the following described lands [as described in the mortgage], * * * and for and in consideration of the covenants to be kept and performed by Lewis H. Goble, * * * ," the said Cooper will convey the property to Lewis H. Goble, but, in the event of failure to make the payments provided for, the contract shall be null and void. The purchase price mentioned in the contract is the amount agreed upon as due on the mortgage debt, $7,577.40, with interest at the rate of eight per cent per annum until paid, payment to be made by cultivating the

land and delivering to Cooper one-half of the grain raised, Goble to pay all taxes, charges, *etc.,* against the land.

While the contract recited as above, the deed from Louise T. Goble, the holder of the legal title to the land, and in which Lewis H. Goble joined as her husband, and by which the legal title appears to have been conveyed to plaintiff, was dated, executed and delivered on May 17, 1924. This deed is in the regular form of a warranty deed. The agreed statement recites that the deed was executed at the same time and as a part of the same transaction as the contract, and that it was then agreed that "the contract and deed were not to be in effect until a clear title could be delivered to the plaintiff, which the said defendant Lewis H. Goble stated would be after the bankruptcy proceedings were completed." The plaintiff refused to deliver the note to Goble or to satisfy the mortgage and was the holder thereof at the time of trial.

The statement then recites that the plaintiff, in reliance upon the execution of these instruments and the assurance of Lewis H. Goble that the transaction would give him better security for the unpaid mortgage debt, without any expense of foreclosure, permitted Goble to remain in possession and plant and harvest a crop on the premises, but that Goble failed to perform the obligations of his contract, and thereafter abandoned the premises and left the state of Montana, and thereafter the plaintiff, on advice of the attorney for Goble that such action would save foreclosure, recorded the deed on December 6, 1924. On the ninth day of December, 1924, plaintiff leased the premises to a third party. It is agreed that at the time the plaintiff recorded the deed he had no knowledge of the judgment held by Cole, other than the constructive knowledge afforded by the records, "that it was not his intention to accept the land and pay the said judgment lien, and that, had he known of the said judgment, he never would have recorded the deed or attempted to secure title except through foreclosure, and that, as soon as he found out from the continued abstract

of the existence of said lien or judgment and other incumbrances, he immediately delivered the abstract and note and mortgage to his attorney, * * * with instructions to foreclose at once.''

It is agreed that the value of the property on February 1, 1924, did not exceed $5,000. It is further agreed that Cole had no knowledge of the transactions recited, except those matters appearing of record, and that he at no time consented that his judgment should be subject to the agreement made; that the defendants Goble have been discharged in bankruptcy, and that, while the deed had affixed thereto a fifty-cent revenue stamp, it was affixed under the mistaken supposition that it was necessary, although no money consideration was paid for the deed.

The judgment and decree is in the usual form on foreclosure, and contains no reference to the claim of defendant Cole, who, however, as a basis for his specifications of error, asserts that, in order to justify the court's finding that the allegations of the complaint are true, findings must be implied (1) that plaintiff was the owner and holder of the mortgage on February 1, 1924; (2) that plaintiff took the deed as additional security for the mortgage; (3) with no intention of merging the title in himself; (4) that there was no merger either in fact or in law; and (5) that Lewis H. Goble had some interest in the land, entitling him to speak for Louise T. Goble, the record owner, and entitling plaintiff to rely upon his representations. With these implied findings assumed, defendant predicates error upon the holdings of the court that (1) the plaintiff had a valid and subsisting mortgage as the basis of his action; (2) that the taking of the deed, execution of the contract to Goble, and later leasing the property to a third party, did not effect a merger of title and destroy the mortgage; (3) that the declarations and acts of ownership did not prove an intent to merge title; and (4) did not effect a merger in law; (5) that plaintiff took title to the property on February 1, 1924, more than a month

before securing assignment of the mortgage; and (6) that plaintiff had a right to rely upon the representations made by Goble on February 1, 1924.

1. Much of counsel's argument is based upon the assertion that plaintiff took title to the property, and that the contract with Goble was entered into on February 1, 1924, prior to the assignment of the mortgage to him, and that on that day he asserted ownership over the property, and therefore could not have taken the deed as additional security for the mortgage of which he was not the owner. This assertion is not borne out by the record.

It is true that the contract, in which plaintiff designates himself as owner of the property, contains the statement, "drawn in duplicate this the 1st day of February, 1924," but the agreed statement of facts recites that the contract and deed were signed and acknowledged at the same time and as a part of the same transaction, on May 17, 1924, and the deed, made a part of the record, substantiates the statement. Under the agreed statement of facts, Lewis H. Goble and plaintiff merely "conferred" concerning the transaction on February 1, and did not consummate it until May 17, 1924. There can be no findings implied with respect to February 1, 1924, and there is no merit in the specifications based upon such implied findings.

2. As to the assertion that the court must have found that [1] plaintiff was entitled to rely upon the representations made by Lewis H. Goble as speaking for Louise T. Goble, it is admitted that the agreement and contract were made at the same time and as a part of the same transaction in which the deed was executed. The agreement and contract were made in consideration of the execution of the deed, and were not effective until the transaction was completed by the delivery of the deed. Under these circumstances the several transactions are to be taken together and considered as though all of the promises, agreements, and obligations of the parties

were contained in a single instrument signed by all the parties obligated under the agreement. (Sec. 7533, Rev. Codes 1921; *United States Nat. Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084, with decisions there assembled; *Leigland* v. *Rundle L. & A. Co.,* 64 Mont. 154, 208 Pac. 1075; *Lyon* v. *Dailey Copper Min. Co.,* 46 Mont. 108, 126 Pac. 931.) It is therefore immaterial that Louise T. Goble did not sign one of the instruments executed, or join in the representations made; as she was a party to the entire transaction, under the agreed statement, took part therein and had knowledge thereof, and did sign the final instrument closing the transaction, the representations made were as much hers as though she had made them herself. (*Union Bank & Trust Co.* v. *Himmelbauer,* 57 Mont. 438, 188 Pac. 940.)

3. Whether plaintiff had a valid, subsisting mortgage at the [2] time he commenced his action depends upon the solution of the remaining questions presented under the several assignments based upon the alleged merger of title.

As between the parties to the transaction, the question as to whether there is a merger of title is one of fact, and its determination depends upon the intention which prompted it. "This intention may be shown by the recitals in the deed itself, or by a separate agreement in writing, or it may be ascertained from parol evidence of the circumstances accompanying the transaction." (*Dubbels* v. *Thompson,* 49 Mont. 550, 143 Pac. 986.) Here the agreed statement of facts takes the place of parol evidence, and therein it is specifically agreed that the deed in question was signed and acknowledged as "additional security" for the mortgage debt and "as additional security only." It is therefore apparent that there was no intention on the part of the plaintiff, at the time the transaction was closed, to merge the legal and equitable title in himself, and no merger "in fact" was consummated.

4. Did the acts of the parties effect a merger in law in spite of this intention?

Defendant Cole contends that (a) the taking of the deed, (b) the making of the contract reciting that plaintiff was the "owner" of the premises and would convey good title, (c) the declaration that the deed was taken to avoid the expense of foreclosure of the mortgage, (d) the provision in the contract for the payment of eight per cent interest instead of seven, as called for in the mortgage note, and (e) the assumption of ownership by recording the deed and leasing to the third party after default by the Gobles, effect a merger in law.

(a) In support of his contention that the giving of the deed is tantamount to a satisfaction of the mortgage and that the intervening lien attaches, counsel cites *Western Iron Works* v. *Montana P. & P. Co.*, 30 Mont. 550, 77 Pac. 413, and *Hamilton* v. *Smith*, 36 Mont. 1, 122 Am. St. Rep. 330, 92 Pac. 32. Those decisions rested upon fact conditions shown and are not in point here.

As between the parties to a real estate mortgage, a deed to **[3]** the property by the mortgagor to the mortgagee does not of itself extinguish the lien. (*Dubbels* v. *Thompson*, above.)

(b) The giving of the contract to Goble, reciting therein **[4]** that plaintiff was the "owner" of the property and would convey good title, in the event Goble paid the amount stipulated, which was the mortgage debt, could not effect a merger in face of the stipulation that the transaction then had was only for additional security for the payment of that debt. (*Huebsch* v. *Scheel*, 81 Ill. 381.)

(c) The declaration concerning the avoidance of foreclosure **[5]** by means of the deed was not that the deed was taken for that purpose, but, as shown by the agreed statement of facts, at the time of the discussion between plaintiff and Lewis H. Goble, Goble represented that the taking of the deed would give plaintiff "better security for the unpaid mortgage debt, without any expense or the expense of foreclosure," and an attorney referred to as the "attorney for the said Lewis H.

Goble," after Goble had left the state, represented that the recording of the deed "would save foreclosure."

The statement by Goble was merely an opinion as to what might happen in the future, in the event of failure on his part to pay the mortgage debt by the use of the deed thereafter to be delivered as "additional security for that debt," and, under the agreed statement made, could have no effect on the title to the property at that time, while the advice of counsel as to the use to which the deed might then be put could not alter the legal effect of what had theretofore been done.

(d) The fact that Goble was compelled to pay eight per cent [6] under the contract, whereas the mortgage note called for but seven per cent interest, was but additional consideration for the forbearance of the plaintiff. The security afforded by a mortgage is for the discharge of the principal obligation, and, so long as that obligation is kept alive, the manner in which the indebtedness is evidenced does not affect the lien of the mortgage. (*Finger* v. *McCaughey,* 114 Cal. 64, 45 Pac. 1004.)

The note evidencing the principal obligation may be renewed without affecting the lien of the mortgage (*Wilson* v. *Pickering,* 28 Mont. 435, 72 Pac. 821), and certainly, if the parties agree after maturity that, for an extension of time, the mortgagor would from that day pay a greater rate of interest than that called for in the mortgage note, they do not thereby affect the security in existence.

(e) The assumption of ownership, recording the deed, taking [7] possession, and leasing the premises, in law would effect a merger (27 Cyc. 1381; *Ames* v. *Miller,* 65 Neb. 204, 91 N. W. 250; *Rumpp* v. *Gerkins,* 59 Cal. 496); but this is a proceeding in equity, and courts of equity have ever been meticulous in such cases in the protection of the interests of the mortgagee, and in so doing refuse to be guided by the rules of law.

Where the legal and equitable titles unite in the same person, and there are no intervening interests or liens, and no

reason for a contrary result, the acceptance by the mortgagee of a deed to the premises effects a merger (*Chase Nat. Bank v. Hastings,* 20 Wash. 433, 55 Pac. 574), but "there will be no merger of estates where such result would be productive of injustice to the mortgagee, or injurious to his interests, by depriving him of rights which he could claim and exercise by keeping the two estates distinct" (27 Cyc. 1391, citing authorities from many jurisdictions). Equity will always keep the legal title and the interest of the mortgagee separate, though held by the same person, when necessary to protect his just rights (*Scrivner v. Dietz,* 84 Cal. 295, 24 Pac. 171; *Davis v. Randell,* 117 Cal. 12, 48 Pac. 906), and will presume, even in the absence of proof as to his intention, that he intended to keep on foot his mortgage title when essential to protect his security as against intervening title, or for other purposes (*Hines v. Ward,* 121 Cal. 115, 53 Pac. 427; *Anglo-Californian Bank v. Field,* 146 Cal. 614, 80 Pac. 1080). "If there is no expression or intention on the part of the mortgagee at the time he acquires the fee, it must be presumed that he intended to do that which was most advantageous to himself, and, if this is that the two estates should not merge, no merger will take place." (Note to 99 Am. St. Rep. 162, citing *Chase v. Van Meter,* 140 Ind. 321, 39 N. E. 455; *Patterson v. Mills,* 69 Iowa, 755, 28 N. W. 53; *Freeman v. Paul,* 3 Greenl. (Me.) 260, 14 Am. Dec. 237; *Wyatt-Bullard Lumber Co. v. Bourke,* 55 Neb. 9, 75 N. W. 241.)

Following these rules of equity, it is held that where, as [8] in the case at bar, there are outstanding intervening encumbrances or liens of which the mortgagee is in ignorance at the time he takes the legal title, equity will intervene to prevent a merger of title on the theory that his interests require it and that he could not have intended to extinguish his mortgage rights if he had known of the intervening encumbrances or liens. (*Rumpp v. Gerkins,* above; *Hines v. Ward,* above; *Troost v. Davis,* 31 Ind. 34; *Chase v. Van Meter,* above;

*Meacham* v. *Steele,* 93 Ill. 136; *Gray* v. *Nelson,* 77 Iowa, 63, 41 N. W. 566; *Howard* v. *Clarke,* 71 Vt. 424, 76 Am. St. Rep. 782, 45 Atl. 1042; *Title Guaranty & Trust Co.* v. *Wrenn,* 35 Or. 62, 76 Am. St. Rep. 454, 56 Pac. 271.)

As it is conceded that the plaintiff retained the note and refused to satisfy the mortgage of record, accepted the deed only as additional security for the principal obligation, and only placed it of record after default by the mortgagor, and then only because of the belief that there were no intervening encumbrances or liens, and it is expressly agreed that he would not have recorded the deed or exercised dominion over the property had he known of the existence of defendant's lien, and never intended to place himself in a position where he would have to pay the judgment, which intention is fortified by the agreement that the value of the property was nearly $3,000 less than plaintiff's claim against it, under the above rules of equity most favorable to the defendant, there was no merger of title, and plaintiff had a valid and subsisting mortgage which he had the right to foreclose.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

Rehearing denied January 11, 1927.