MARSHALL, APPELLEE, *v.* EBLING ET AL.; EWING, APPELLANT.

(No. 1032—Decided June 24, 1942.)

*Messrs. Phelps & King,* for appellee.
*Mr. Henry C. Church,* for appellant.

NICHOLS, J. This cause comes into this court on appeal by appellant, James A. Ewing, on questions of law and fact from the findings, orders and decrees of the Common Pleas Court of Trumbull county, and is submitted by both parties upon the transcript of the evidence taken in the lower court.

At and prior to June 20, 1921, VanEmon Marshall was the owner of three certain promissory notes secured by mortgages on 242 acres of land in Lordstown township, Trumbull county, title to the land being in Christy Ebling. Two of these mortgages had been executed by Ebling, and one had been assumed by Ebling when he purchased the land, all three being subsequently assigned to VanEmon Marshall.

On June 20, 1921, Ebling and his wife executed and

delivered to J. Calvin Ewing, predecessor in title to the appellant, James A. Ewing, their promissory note for $1,139.25, secured by a mortgage on the same land. All these mortgages were duly entered of record in Trumbull county.

August 5, 1926, being more than four years after the Ewing mortgage had been recorded in Trumbull county, Christy Ebling and wife, in consideration of release from personal liability from any deficiency upon his mortgage indebtedness to VanEmon Marshall, which then aggregated $16,359.52, conveyed to Marshall the property described in all these mortgages, by the provisions of which deed the grantors expressly warranted the premises to be free and clear from any encumbrances except the mortgages then owned by Marshall. Shortly after receiving this deed from Ebling, Marshall cancelled of record the three mortgages held by him on the 242 acres of land, the title to which subsequently, by will of VanEmon Marshall and quit-claim deed from his brother, became vested in appellee, Ralph V. Marshall.

VanEmon Marshall died in 1933, the promissory notes secured by the three mortgages held by him being retained in his possession and now held by appellee, who brought this action in 1939, praying, among other things, that the cancellation and release of the three mortgage deeds be set aside and held for naught and the mortgage deeds and the liens thereof fully reinstated and restored; that the liens on the premises be marshalled in accordance with their priority; and that plaintiff be found to have the first, second and third mortgage liens thereon and the amount of the indebtedness secured thereby be first satisfied from the proceeds of sale thereof. On the basis that the mortgaged premises are of much less value than the amount now due on the indebtedness secured by the first three mort-

gages held by appellee, the petitioner also prays that his title to the premises be quieted as against the fourth mortgage held by appellant.

The Eblings were and are in default for answer or other pleading, and have not appealed to this court. The appellant, Ewing, denies that appellee is entitled to the relief prayed for, and it is his contention that under the facts of this case the obligations of Ebling were entirely cancelled; that it was the intention that the debt should be completely discharged; that the first three mortgages now held by appellee merged in the legal title acquired by VanEmon Marshall and the mortgages no longer exist; that the filing and recording of the Ewing mortgage was such notice to Van-Emon Marshall as precludes any claim that Marshall acted without notice of the Ewing mortgage; that actual as distinguished from constructive notice of the Ewing mortgage by Marshall is not required to defeat plaintiff's claim, but if lack of actual notice of the Ewing mortgage by Marshall is an element contributing to the right of appellee to the relief sought, then the burden of proving such want of actual knowledge is upon plaintiff, and it is contended there is no evidence in the record showing or tending to show such lack of actual knowledge.

It is the further claim of appellant that the relief sought in plaintiff's petition is barred by the statute of limitations, Section 11227, General Code; that as to the first two of the mortgages held by Marshall no action was brought thereon within twenty-one years after the last due date thereof and, therefore, the lien of these two mortgages has expired by express statute, Section 8546-2, General Code.

Thus it will be seen that many questions are presented by the claims of the parties. Of course, if the statute of limitations has barred plaintiff's action and

has been properly plead, the whole issue must be determined favorably to defendant. We will dispose of that question first.

The action of plaintiff is not for money judgment against the person liable on the notes secured by the mortgages held by plaintiff. At least one issue presented by the pleadings is the right of plaintiff to foreclosure of these mortgages. By the record it clearly appears that Christy Ebling, on August 5, 1926, acknowledged not only his indebtedness on the notes secured by these mortgages, but he also specifically acknowledged the validity of these mortgages in writing when he executed his deed to VanEmon Marshall, wherein he expressly warranted the title to the real estate to be free and clear from all liens and encumbrances except the three mortgages then held by Marshall. We think this written acknowledgment was sufficient to toll the running of the statute of limitations as to the debtor and if tolled as to the debtor it could not be availed of as a defense by the appellant, Ewing.

This action was instituted in 1939, it thus appearing that the action for foreclosure of these mortgages was brought before such foreclosure action became barred by the statute of limitations. True, plaintiff's petition prayed for other relief in equity, but all such relief was incidental to the principal relief prayed for, the foreclosure of the mortgages. By his failure to demur or plead to plaintiff's petition the defendant, Ebling, admits the allegations thereof to be true and as to him the petition clearly states a good cause of action for setting aside and holding for naught the cancellation and release of the Marshall mortgages and for the foreclosure thereof.

The defense of the statute of limitations must be pleaded, otherwise it is waived. It has been held by the Supreme Court that where it affirmatively appears

on the face of the petition that the cause of action accrued at such a period that under the statute of limitations no action can be brought, the defendant may demur to the petition on the ground that the petition does not state facts sufficient to constitute a cause of action. (*Seymour* v. *Railway Co.*, 44 Ohio St., 12, 4 N. E., 236; but see *Culbertson Co.* v. *Warden,* 123 Ohio St., 297, 175 N. E., 205.)

The defendant, Ewing, demurred to the petition as not stating facts sufficient to constitute a cause of action against him and demurred to the opening statement of counsel and to the introduction of any evidence, and moved for judgment for defendant, Ewing, at the close of plaintiff's evidence. Neither demurrer nor motion for judgment was specifically grounded upon the statute of limitations, nor was that statute invoked by the answer.

To warrant the sustaining of a demurrer to the petition on the ground that the cause of action is barred by the statute of limitations, the petition must show on its face that the whole cause of action is so barred. *Osborn, Admr.,* v. *Portsmouth Natl. Bank,* 61 Ohio St., 427, 56 N. E., 197.

The petition of plaintiff is good as against demurrer, and it being conceded that the opening statement of counsel closely followed the petition the bar of the statute was not raised by demurrer thereto, or by objections to the introduction of any evidence, or by the motion of defendant for judgment; neither does the evidence as a whole warrant a finding that plaintiff's cause of action is barred by the statute as raised in oral argument and brief in this court.

As to the claim of appellant that the lien of each of the first two mortgages set up in plaintiff's petition has been lost by reason of Section 8546-2, General Code, an examination of this section discloses that the record

of a duly recorded mortgage "shall not be deemed to give notice * * * that such mortgage debt remains unpaid or has been extended or renewed" after twenty-one years from the last due date of the principal sum or any part thereof secured thereby, "and as to *subsequent* bona fide purchasers, mortgagees and other persons dealing with such land for value, the lien of such mortgage 'shall be deemed to have expired." (Italics ours.)

It is clearly seen that the lien of a mortgage which remains unsatisfied or unreleased of record for more than twenty-one years after the last due date of the principal sum or any part thereof secured thereby is not by the section deemed to have expired absolutely but only as to "subsequent bona fide purchasers, mortgagees and other persons dealing with such land."

Appellant is not a subsequent bona fide purchaser, mortgagee or other person dealing with this land. He became a mortgagee long before the twenty-one year period referred to in the statute had run, and by virtue of the recording statute was deemed to have notice of plaintiff's liens when he took the fourth mortgage involved in this action. None of plaintiff's mortgages had been in existence for twenty-one years when appellant's predecessor in title dealt with this land, at which time all three of appellant's mortgages were valid and subsisting recorded liens.

Other language used in Section 8546-2, General Code, clearly indicates that the purpose of the section is solely for the benefit of persons whose "rights were acquired or vested between such expiration and refiling," as provided for in the section.

There is no merit in appellant's claim that the liens of the first two mortgages of plaintiff had expired by reason of Section 8546-2, General Code.

The real question in this case, the answer to which decides all other claims of the parties, is:

Did the acceptance by VanEmon Marshall of the deed from the defendants, Ebling, operate to merge Marshall's mortgage liens into the legal title to the premises, under all the facts and circumstances shown by the evidence, including the fact that VanEmon Marshall upon accepting such deed caused the mortgages then held by him to be cancelled and released of record; retaining to himself, however, the mortgage instruments and notes secured thereby?

We think there can be do doubt from the evidence that as between VanEmon Marshall and Ebling these parties intended by the execution and delivery of the deed from Ebling to Marshall that the entire debt of Ebling to Marshall was understood to be paid, as testified to by Ralph V. Marshall, plaintiff, but it is equally clear that such understanding was based upon the belief by Marshall that the mortgages held by him were the only encumbrances against the land, as represented in the warranty of Ebling. The evidence is to the effect that at the date of this deed the market value of the land was much less than the amount then due Marshall on the notes of Ebling, and Ebling desired to make the transfer to relieve himself from a deficiency judgment in case Marshall brought suit to recover the debt owing him.

After his death an unsigned title report was found among the papers of VanEmon Marshall (plaintiff's exhibit 10), which report did not disclose the mortgage lien of James A. Ewing, although the Ewing mortgage was of record at the date of the report. It is contended by appellant that the evidence does not disclose that VanEmon Marshall ever saw this title report, but the fact that it was found among his papers, coupled with the testimony of Ralph V. Marshall, raises the fair inference that he did see it and likely relied thereon in connection with the warranty of Ebling.

Of course, Ebling knew of the Ewing mortgage, for the record discloses he continued to make payments on the note secured thereby after the execution of the deed to Marshall.

This warranty of Ebling and the title report give rise, we think, to the fair inference, when considered in connection with all the circumstances surrounding the transfer to Marshall, that he had no actual notice of the Ewing mortgage. It is scarcely conceivable that Marshall intended by the transfer of the land to him that this land was still to be encumbered by the Ewing lien. Men of affairs do not so act against their own interest. The market value of land at the time of the deed was, as shown by the evidence, more than $4,000 less than the amount then due Marshall. Even though Marshall had actual knowledge of the Ewing lien, it was certainly to the advantage of Marshall to keep his own prior liens alive rather than merge them in the legal estate acquired by the deed. Of course, the record of of the Ewing mortgage was constructive notice thereof to all persons acquiring an interest in or dealing with the land, but what one knows constructively only and without actual knowledge certainly can have but little, if any, weight in determining the intent of Marshall to merge his liens in the legal title.

The record further indicates that the transfer of the legal title to Marshall has not served to reduce the amount owing on the notes secured by his mortgage, the evidence being to the effect that from the date of the deed to Marshall up to September 1, 1940, the Marshalls, father and son, received from the lands, from all sources, the sum of $3,910.78 and expended for taxes, insurance premiums and repairs the sum of $4,009.55, resulting in an excess of expenditures over income of $98.77.

The Ewing mortgage was executed long after the

record of the Marshall mortgages, and there is no claim that Ewing did not have actual knowledge of the preexisting liens of Marshall; that Ewing had constructive notice thereof is certain. Very clearly, from all the evidence, a finding in favor of Ewing will result in his unjust enrichment, while a finding against him will leave him in no worse situation than if the deed from Ebling to Marshall had never been executed and delivered. This action is one in equity; what, then, is the rule governing the chancellors in administering equity between the parties?

We hold the true rule which should govern in this case is set forth in the language found in 27 Ohio Jurisprudence, 520, Section 288, as follows:

"But whatever may be the rule at law, or as between the mortgagor and the mortgagee, or the mortgagee and an innocent purchaser, it is well settled in equity that the conveyance of the mortgaged premises, by the mortgagor to the mortgagee does not necessarily merge the mortgage or extinguish the mortgage debt. Whether the mortgage is merged or the mortgage debt extinguished generally depends upon the intention of the person in whom the two estates unite. If it is entirely a matter of indifference to him whether the charge or encumbrance is kept alive or not, a merger follows, as no beneficial purpose is to be subserved by keeping the two estates apart and subsisting. He may, however, elect to merge or sink the charge in the conveyance, or he may elect to keep and continue it separate and distinct from the estate upon which it rests. Where the intent to merge or not to merge, is, with knowledge of the facts, expressly or unequivocally fixed and declared by him, the question is settled by such determination. But where there is no expressed intent, or the party is incapable of expressing any, the court looks into the circumstances, and implies an in-

tent upon the part of the owner of the two interests to keep the charge or encumbrance subsisting, where its subsistence is beneficial to him, and where there are no equitable circumstances which ought to require its extinguishment. Merger will never be presumed against the equities of the parties. To effect a merger, there must be an unequivocal act on the part of the party to be affected by it, absolutely and irrevocably relinquishing the right to be merged.

"Even though the mortgage has been discharged, the lien of the mortgage may be restored, under some circumstances."

Many cases may be cited in support of the stated rule, among them being: *Bell* v. *Tenny*, 29 Ohio St., 240; *Myers* v. *Hewitt*, 16 Ohio, 449; *Corwin* v. *Collett's Exrs.*, 16 Ohio St., 289; *Case* v. *Golnar*, 33 Ohio App., 389, 169 N. E., 724; *Eythe* v. *Commercial Bank & Savings Co.*, 40 Ohio App., 150, 178 N. E., 425; *Peoples State Bank of Wauseon* v. *First Natl. Bank of Napoleon*, 40 Ohio App., 374, 178 N. E., 702.

See, also, 19 Ruling Case Law, 489, 490, Sections 282, 283, 284; 129 A. L. R., annotations at page 1435; 3 Pomeroy's Equity Jurisprudence (5 Ed.), 153, 156, 158, Sections 791, 792, 793; Bispham's Principles of Equity (10 Ed.), 275, Section 161; *McCraney* v. *Morris*, 170 S. C., 250, 170 S. E., 276, 95 A. L. R., 622, and annotations at page 628.

Each of the cases cited by appellant deals with the effect of the recording statutes upon *after acquired* rights of others in the land. There can be no question that the purpose of the recording statutes is to give notice to all persons subsequently acquiring rights or interests in the land. But the mortgage liens of appellee in the lands described in the petition were not acquired after the mortgage of appellant. The question here is whether the mortgage liens of plaintiff,

which were acquired long before the lien of defendant, appellant herein, merged in the legal title upon the acceptance of the Ebling deed. The lien of defendant's mortgage was in no wise impaired or adversely affected by the conveyance from Ebling to Marshall.

The court finds the facts stated in the petition are true and finds on the issues joined in favor of plaintiff, appellee herein, Ralph V. Marshall, and against defendant, appellant, James A. Ewing, that at the time of the acceptance of the deed from the defendants, Christy Ebling and Mary E. Ebling, and of the cancellation of the first three mortgage deeds of record, VanEmon Marshall did not have actual knowledge of the existence of the mortgage deed of the defendant, James A. Ewing, or of the lien thereof upon the premises and accepted the deed and cancelled the mortgage deeds without any intent that the first, second and third mortgage liens should merge in the legal title to the premises; that the subsistence of the mortgage liens was beneficial to him and there are no equitable circumstances which ought to require their extinguishment, and whereby VanEmon Marshall became seized in fee simple of the premises described in the petition, subject to the first, second and third mortgage liens, of which he was the owner and holder, and subject to the fourth mortgage lien of the defendant, James A. Ewing; that plaintiff, since the death of VanEmon Marshall, has succeeded to all the rights, liens and equities of VanEmon Marshall and is entitled to have the cancellations and releases of the mortgage deeds set aside and held for naught and the liens thereof fully reinstated and restored.

The court further finds the amounts due on the notes secured by plaintiff's three mortgages, with interest to November 10, 1941, is the sum of $36,618.03, with interest from that date at 6 per cent per annum,

and that sum is in excess of the probable value of the premises described in the petition.

The court further finds that there is due and unpaid to defendant, James A. Ewing, from the defendants, Christy Ebling and Mary E. Ebling, upon the note set forth in his cross-petition, as of November 10, 1941, the sum of $3,781.91, with interest from that date at the rate of 7 per cent per annum; that the conditions of this mortgage have been broken and the defendant, James A. Ewing, is entitled to have the same foreclosed.

It is further ordered and adjudged that the defendant, James A. Ewing, recover from the defendants, Christy Ebling and Mary E. Ebling, upon the note set forth in his cross-petition, the sum of $3,781.91, with interest from November 10, 1941, at the rate of 7 per cent per annum.

It is further ordered, adjudged and decreed that if the defendant Ewing desires to have his mortgage deed foreclosed and the premises sold, then, within ten days from and after the date of entry of this decree, he shall file with the clerk of this court an election to so proceed, and in the event he shall fail to file such election within the time provided, or elects not to proceed in foreclosure, then the title of plaintiff to the premises described in the petition shall be and the same is hereby forever quieted against any right, title, interest or lien of the defendant, James A. Ewing, and any and all persons claiming under him, and they are hereby forever barred from hereafter asserting any right, title or interest in or lien upon the premises adverse to the title of plaintiff, and the clerk of this court shall cancel, release and discharge the mortgage of record in volume 114, at page 491, Trumbull county records of mortgages.

In the event the defendant, James A. Ewing, shall

elect to proceed in foreclosure and the defendants,. Christy Ebling and Mary E. Ebling, fail within three days after the filing of such election to pay, or cause to be paid, to the defendant Ewing the amount found due him, an order of sale in foreclosure may be issued and the premises appraised, advertised and sold according to law, and the proceeds derived from the sale thereof remaining after payment of taxes, assessments and the costs of this proceeding shall be applied to the payment of the mortgage liens of the plaintiff and the defendant Ewing in accordance with the priority thereof herein found, and in the event the proceeds derived from such sale are insufficient to pay the taxes, assessments, court costs and the amount. found due to plaintiff, then the defendant Ewing shall pay all of the costs incurred by reason of such fore- closure proceedings.

It is further ordered that the defendant Ewing pay the costs of this proceeding.

An entry may be prepared in accordance herewith..

*Decree accordingly.*

CARTER, P. J., and PHILLIPS, J., concur.